UNITIED STATES DISTRICT COURT
FOR THE
DISTRICT OF COLUMBIA

THAY HUMES,

    Plaintiff,

CIVIL ACTION NO. _____

v.

BEAR DEFENSE SERVICES, LLC,

    Defendant.

_____/

**COMPLAINT FOR EQUITABLE AND
MONETARY RELIEF AND DEMAND FOR JURY TRIAL**
for Race and Religion Discrimination and Retaliation in violation of 42 U.S.C Code 2000e, Title VII of the Civil Rights Act of 1964 and 42 U.S.C § 1981, Injunctive Relief and Intentional Infliction of Emotional Distress

**NATURE OF THE ACTION**

1. This is an action to halt and seek redress for the unlawful racial discrimination and retaliation that Bear Defense Services, LLC ("BDS") has exacted upon Thay Humes ("Humes").

2. 42 U.S.C. Code § 2000e, Title VII of the Civil Rights Act of 1964 expressly prohibits discrimination in employment on the basis of race and religion.

3. 42 U.S.C. § 1981 provide for the recovery of compensatory and punitive damages in cases of intentional violations of Title VII of the Civil Rights Act of 1964.

4. This action arises out of the unlawful discrimination and retaliation exacted upon Humes based upon his race as an African-American man and his religion as a Christian.

**JURISDICTION and VENUE**

5. Pursuant to 28. U.S.C. Code § 1331, this Honorable Court has subject matter jurisdiction over this action because of the federal civil rights law alleged in this complaint.

6. Pursuant to 28 U.S. Code § 1332, this Honorable Court has original jurisdiction over this action because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states. Humes also seeks compensatory and punitive damages as authorized by 42 U.S.C. § 1981.

7. Venue is proper in this Honorable Court because Humes resides in the District of Columbia.

8. Jurisdiction is proper because Plaintiff resides in the District of Columbia and the Defendant BDS has substantial contacts in the District of Columbia as a government contractor for the United States Department of Defense.

## PARTIES

9. Humes, a qualified individual, is an African-American male residing in the District of Columbia.

10. Defendant BDS, is a limited liability company headquartered and with its principal place of business in Tampa, Florida. Defendant BDS operates and regularly transacts business in the District of Columbia.

## EXHAUSTION OF ADMINISTRATION REMEDIES

11. Humes has exhausted his administrative remedies. Humes filed a charge of discrimination with the United States Equal Employment Opportunity Commission alleging race discrimination and retaliation with 300 days of the acts of discrimination. He was issued a Notice of Right To Sue on October 28, 2014. He has filed this action within 90 days of his receipt of the Notice of Right To Sue.

## FACTUAL ALLEGATIONS

12. Plaintiff Humes, dutifully carried out his duties as Mission Coordinator/Chief Load Master for the Defendant BDS from October 15, 2012 until April 2014. He was more than

qualified to perform the essential functions of his position. Throughout his employment, Humes made significant contributions to BDS. Humes worked extraordinary hard and consistently demonstrated a pattern of relentless and steady execution of not only his essential duties, but also assignments, projects and tasks that fell beyond the scope of his duties. He carried out these duties cooperatively and enthusiastically. Despite his proven record of success, his employment was summarily and unlawfully derailed within weeks of his complaints related to his race to supervisors, and he was illegally retaliated against after filing a complaint with the United States Equal Employment Opportunity Commission.

13. On or about March 2013, a GPS Procom tracker became detached from Humes' bullet proof vest and lost. As a reprimand, $961.93 was deducted from Humes' paycheck and Jim Herrera, BDS Theater Wide Aviation Manager for Afghanistan and a Caucasian male, taunted humiliated Humes continually and threatened to have him terminated.

14. Two other similarly situated Caucasian male employees lost their trackers but their paychecks were not deducted any funds as a result.

15. On or about July 2013, Darryl Jones, BDS Begram Air Base Aviation Manager and Flight Coordinator Manager and a Caucasian male, approached Humes and demanded he relinquish his company issued weapon pending a weapons qualification; ex-police officers were allowed to keep their weapons only.

16. Humes informed Darryl Jones he had qualified months prior and all the paperwork and company signoffs were in his personnel folder. Humes is also an ex-police officer. Ultimately, Humes turned over his weapon as directed.

17. Similarly situated non-African-American BDS employees who are ex-police officers and non-ex-police officers were allowed to keep their weapons.

18. On or about August 20, 2013, Humes was not allowed to take the left seat of the cockpit to assist and fly the helicopter when the co-pilot became very ill. In the interest of safety, policy, and FAA Regulations; Humes offered to take the open seat next to Captain Tobia Savage, a Caucasian male. Captain Tobias Savage allowed Darryl Jones, a non-African-American employee, to take the open seat. Once the helicopter took off, Captain Tobias Savage cut the circuit breaker, which silenced the rear headphones worn by Humes so there would be no communication between them (Savage and Jones) and Humes.

19. On or about August 28, 2013, after the crew had been flying for 2 hours and 15 minutes, Captain Tobias Savage returned the aircraft to the air base to swap Humes with Jared Barr, a Caucasian male Chief Load Master, because he was *uncomfortable* flying with Humes. Immediately after landing Darryl Jones began cursing and yelling at Humes about the August 20th incident (see above), and ordered Humes to stay away from the aircraft and to stay in his room.

20. On or about August 28, 2013, Humes reported the discriminatory acts to Lemuel Scott, BDS Administration Lead Supervisor and an African-American male, in writing and in a one-on-one interview about the August 20th and August 28 incidents. Humes specifically stated he believed Darryl Jones and Captain Tobias was discriminating against him because he was an African-American. Humes further described the tremendous disparity in treatment by Darryl Jones between himself and similarly situated Caucasian male employees.

21. Humes reported the discriminatory acts to Anthony Long, BDS Kandahar Airbase Aviation Manager and a Caucasian male.

22. Humes verbally reported the discriminatory acts to James Butler, BDS Bagram and Kandahar Airbase Assistant General Operations Manager.

23. Since August 28, 2013, Humes was left to spend his days sitting behind a desk as a result of Humes reporting acts of discrimination to Lemuel Scott.  As a result of Humes complaints, Defendant BDS prohibited Humes from performing his assigned duties.

24. As a company practice, Defendant BDS permitted its employees to attend church.  Humes was not permitted to attend church on numerous occasions.

25. On or about March 24, 2014, Layton Howell, BDS Helicopter Captain and a Caucasian male, demanded that Mr. Humes accompany him on the mission in order to comply with FAA regulations, which Mr. Humes did.  Subsequently, Layton Powell was reprimanded verbally by Lemuel Scott.

26. Due to the continued shortage, Layton Powell requested Mr. Humes accompany him on a second mission, Lemuel Scott and Darryl Jones refused his request and ordered Jo Baza, a non-African American Generator Technician, to sit in the co-pilot seat and accompany Layton Powell on his missions starting March 25, 2014.

27. Joe Baza is a Generator Technician, not a co-pilot.

28. On or about April 1, 2014, Humes became aware of James Butler, Lemuel Scott, and Dan Potts, BDS Project Manager and Project Lead and a Caucasian male, discussing the EEOC complaint Humes had filed against BDS and as retaliation, they made a plan to retaliate against Humes with physical harm by beating Humes' ass and transferring him to KAF (a base under the control of James Butler) to be treated as a flunky.  These individuals also violated Humes' privacy by going through his personal things.

29. After, Jim M. received a cease and desist letter from Humes' Counsel about his employee's threats of retaliation, within eight hours Humes was transferred back to the United States.  Humes was never allowed to return to his assigned post.

30. Once Defendant BDS shipped Humes back to the United States, the discrimination continued because the Defendant BDS did not allow Humes to return to his post.

31. The race and religion discrimination and retaliation came as a complete surprise to Humes. The timing of the adverse actions compel but conclusion, race and religion discrimination and retaliation in violation of the Title VII of the Civil Rights Act of 1964.

### COUNT I: FIRST CLAIM FOR RELIEF
Violation of Title VII of the Civil Rights Act of 1964
Race

32. Humes realleges and incorporates by reference each allegation contained in each aforementioned paragraph as though fully set forth herein.

33. Title VII of the Civil Rights Acts of 1964, 42 U.S.C. § 2000e, provides that:

> It shall be an unlawful employment practice for an employer—
> **(1)** to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
> **(2)** to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

34. Because Humes is an African-American, he is a member of a protected class.

35. Humes was fully qualified to be a Load Master/Missions Coordinator and a Co-Pilot for BDS and was able to perform the essential functions of the positions.

36. Nonetheless, Defendant BDS summarily took adverse action by ordering Humes to work at a desk daily immediately following his reports of discrimination in willful and intentional violation of Title VII of the Civil Rights Act of 1964.

37. As a result of Defendant BDS actions, Humes has suffered and will continue to suffer harm.

### COUNT II: SECOND CLAIM FOR RELIEF

Violation of Title VII of the Civil Rights Act of 1964
Religion

38. Humes realleges and incorporates by references each allegation contained in each aforementioned paragraph as though fully set forth herein.

39. Because Humes is a Christian he is a member of a protected class.

40. Humes was fully qualified to be a Load Master/Missions Coordinator and a Co-Pilot for BDS and was able to perform the essential functions of the positions.

41. Defendant BDS discriminated against Humes based on his religion and refused to allow Humes to practice his religion by prohibiting him from attending church services and not reasonably accommodating his religious observance or practice when there was no undue hardship on the conduct of the Defendant BDS' business.

## COUNT III: THIRD CLAIM FOR RELIEF
42 U.S. Code §1981 Equal Rights Under the Law

42. Humes realleges and incorporates by references each allegation contained in each aforementioned paragraph as though fully set forth herein.

43. 42 U.S. Code § 1981 provides that:

> **(1)** Statement of equal rights
> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
> **(2)** "Make and enforce contracts" defined
> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.
> **(3)** Protection against impairment
> The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

44. Defendant BDS deprived Humes of his civil rights, privileges, and immunities secured by the Constitution and laws by discriminating against him because he is an African-American.

45. Defendant BDS deprived Humes of his civil rights, privileges, and immunities secured by the Constitution and laws by discriminating against him because he is a Christian and practices Christianity.

## COUNT IV: FOURTH CLAIM FOR RELIEF
Intentional Infliction of Emotion Distress

46. Humes realleges and incorporates by references each allegation contained in each aforementioned paragraph as though fully set forth herein.

47. Defendant BDS acted intentionally in conspiring to discriminate, retaliate, and otherwise physically harm Humes.

48. Defendants' conduct was extreme and outrageous.

49. Humes suffered severe emotional distress as a result of BDS's extreme and outrageous conduct.

## COUNT V: FIFTH CLAIM FOR RELIEF
Injunctive Relief

50. Humes realleges and incorporates by references each allegation contained in each aforementioned paragraph as though fully set forth herein.

51. Humes asked this Honorable Court to enjoin Defendant BDS from similarly discriminating against African-Americans.

52. More irreparable harm will result during the pendency of this legal action due to Defendant BDS' illegal discriminatory illegal actions against its employees.  Public interest will be served if relief is granted.

## PRAYER FOR RELIEF

WHEREFORE, Humes respectfully prays that this Court order the following relief:

    a. Enter a declaratory judgment that Defendant BDS intentionally, unlawfully and willfully discriminated against Humes in violation of Title VII of the Civil Rights Act of 1964 and intentionally inflicted emotional distress;

    b. Enter a declaratory judgment that BDS discriminated against Humes in violation of 42 U.S.C. § 1981;

    c. Compensatory and punitive damages for BDS' intentional violation of Title VII of the Civil Rights Act of 1964;

    d. Enjoin Defendant BDS from similarly discriminating against African-Americans.

    e. Equitable relief for emotion distress in the amount of $500,000.00;

    f. Attorneys fees and costs incurred by Humes in bringing of this action; and

    g. Award such additional relief as justice may require.

## JURY DEMAND

Plaintiff demands a jury for all issues proper to be so tried.

Respectfully Submitted,

The Law Offices of Natalie L. Johnson, Esq., PLLC

*Natalie L. Jones*
Natalie L. Jones DC Bar No. 995069
522B 8th Street, S.E.
Washington, D.C. 20003
Tel 202-546-2020
Fax 866-556-9136
nlj@thenljlawoffices.com

*Sheridan L. England*
Sheridan England
S.L. England, PLLC
1050 Connecticut Avenue, 10th Floor
Washington, D.C. 20036
Tel 202-572-1020
sheridan@slengland.com